# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

FATIMA RIDLEY, individually,
and on behalf of all other
similarly situated consumers,

Civil No. 18-12696 (NLH/JS)

        Plaintiff,

**OPINION**

   v.

MRS BPO, LLC,

        Defendant.

---

**APPEARANCES:**

DANIEL ZEMEL
ZEMEL LAW LLC
1373 BROAD STREET
SUITE 203-C
CLIFTON, NJ 07013

    *On Behalf of Plaintiff Fatima Ridley.*

ALEKSANDER P. POWIETRZYNSKI
WINSTON & WINSTON PC
750 THIRD AVENUE
SUITE 978
NEW YORK, NY 10017

    *On Behalf of Defendant MRS BPO, LLC.*

**HILLMAN**, District Judge

In this putative class action, Plaintiff Fatima Ridley ("Plaintiff") alleges that Defendant MRS BPO, LLC ("Defendant") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") when it incorrectly identified the

1

original creditor on "trade lines"[1] placed on Plaintiff's credit report.  Before the Court is Plaintiff's motion for class certification (the "Motion").  (ECF No. 17).  Plaintiff's Motion will be granted.

**BACKGROUND**

On August 13, 2018, Plaintiff filed a one-count putative class action complaint against Defendant for allegedly violating the FDCPA (the "Complaint").  (ECF No. 1).  The facts underlying the Complaint are relatively straightforward.

At some unspecified time, Plaintiff incurred a private student loan debt.  (ECF No. 1 ("Compl.") at ¶6).  In furtherance of its debt collection efforts, Defendant, a debt collector, placed a trade line[2] on Plaintiff's credit report in October 2017, incorrectly listing Transworld Systems Inc. ("Transworld" or "TSI") as the purported original creditor. (Compl. at ¶¶14-18).  The parties appear to agree that Transworld is not, in fact, the original creditor for

---

[1] According to the Complaint, a trade line on a credit report contains multiple fields of mandatory information relevant to a debt, such as the balance owed, payment history, and the identity of the original creditor.  (Compl. at ¶¶8-12).

[2] Plaintiff testified she first saw the information on her credit report in 2016 raising issues as to whether her claim was barred by the statute of limitations.  However, it appears that discovery from Defendant dates the initial trade line entry to October 2017, placing Plaintiff's action comfortably within the one-year statute of limitations period.

Plaintiff's debt, and that Defendant "improperly reported TSI in some cases instead of the name that . . . should have been [reported]." (ECF No. 30-1 ("Meyer Dep.") at 1T22:1-5); see (ECF No. 27 ("Def. Br.") at 1) ("Transworld retained Defendant to collect a student loan Plaintiff owed to NCSLT [(National Collegiate Student Loans Trust)]"). In light of Defendant's error, Plaintiff alleges that she was unsure whether payment was required and that the proverbial "least sophisticated debtor" would be equally confused. (Compl. at ¶19).

Plaintiff argues that Defendant made similar errors affecting other debtors and asks this Court to certify the following class: "[a]ll consumers with a Pennsylvania address for whom Defendant reported an incorrect original creditor to the credit reporting agencies for personal, household, or family debts originating within one year prior to the filing of this complaint."[3] (Compl. at ¶22).

_____

[3] As drafted, Plaintiff's proposed class definition appears too broad. This action stems from Defendant incorrectly identifying Transworld as an original creditor on Plaintiff's credit report. Plaintiff alleges that Defendant similarly misidentified Transworld as the original on the proposed absent class members' credit reports. The proposed class definition, however, paints with a broader stroke; it suggests that Plaintiff seeks certification of a class in which Defendant reported *any* incorrect original creditor on debtors' credit reports. Based upon the parties' filings and the other information available to this Court including the testimony of Defendant's corporate representative discussed *infra*, it appears Plaintiff does not, in fact, seek to certify such a wide-reaching class. Instead, it appears that the parties agree this case is limited to

Defendant offered the following discovery response relevant

to determining whether class certification would be appropriate:

    <u>INTERROGATORY NO. 3</u>: State the number of persons,
their full names and full addresses of all persons
within the State of Pennsylvania for whom Defendant
reported an incorrect original creditor to the credit
reporting agencies for personal, household, or family
debts originating within the period of time beginning
one year prior to the filing of this initial action
and end 21 days after the service of the initial
complaint.

    <u>ANSWER</u>: Defendant objects. . . . Notwithstanding
and without waiving these objections, Defendant
estimates that there are 73 individuals for whom
Defendant furnished information to a consumer
reporting agency suggesting that Transworld Systems
Inc. was the creditor of an account within the
described time period.

(ECF No. 17-5 at ¶3).

Also before the Court is a portion of Michael Meyer's

("Meyer") deposition.[4]  The parties elected to submit only

narrow portions of Meyer's deposition transcript for the

Court's review, and the portions submitted fail to fully

clarify Meyer's role in this action.  Plaintiff represents

in her briefing that Meyer testified as Defendant's

corporate representative, which does not appear to be

_____

Defendant's incorrect listing of Transworld as a creditor.  The
Court adopts this narrower view of the proposed class in
deciding the present motion.

[4] Plaintiff submits portions of Meyer's deposition transcript for
the first time along with her reply brief.  Because Defendant
does not object to Plaintiff's reliance on such material, the
Court will consider it in deciding the Motion.

disputed. Meyer's deposition includes the following

testimony:

> Q. Do you know what name it was and what name it
> should have been?
>
> A. I believe we improperly reported TSI in some cases
> instead of the name that it should have been.
>
> * * * *
>
> Q. Okay. Over the course of the litigation, I have
> asked MRS to explain or to identify the number of
> people this happened to. Were you a part of that
> investigation?
>
> A. Recently, yes.
>
> Q. And do you know how many people were affected by
> this interface issue?
>
> A. It's not an interface issue.
>
> Q. What would you call it?
>
> A. I would call it a client code setting.
>
> Q. Okay. Do you know how many people were affected by
> the client code setting?
>
> A. Yes.
>
> Q. And how many people were affected?
>
> A. 94.
>
> Q. And how did you come to that determination?
>
> A. We looked at the period of time. We looked at the
> specific criteria based upon the suit. And based upon
> those criteria, we looked at various queries and we
> had to go back in time through all of the reporting
> files that we have received to undertake and examine
> which ones they were.

Q. And how do you identify in the course of your investigation that one of these 94 people belong in this list?

A. Based on the criteria that we were provided in the suit based on the class action, we looked at what constituted the class.

Q. Okay. Do you collect for TSI debts outside of Pennsylvania?

A. Yes.

Q. Did you look to see whether consumers outside of Pennsylvania have also been affected by the client code setting issue?

A. No.

Q. Is it possible today that the client code setting that affected Miss Ridley is affecting consumers in different states outside of Pennsylvania?

A. During that time period, yes.

(Meyer Dep. at 1T22:1-5; 1T40:9 to 1T41:25).

Plaintiff's Motion is fully briefed.  <u>See</u> (ECF No. 17).

Defendant has opposed.  (ECF No. 27).  As such, the Motion is

ripe for adjudication.

## **<u>ANALYSIS</u>**

I.   <u>Subject Matter Jurisdiction</u>

This Court exercises subject matter jurisdiction over this

action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

II.   <u>Class Certification: Standard and Analysis</u>

"The class action is 'an exception to the usual rule that

litigation is conducted by and on behalf of the individual named

parties only.'"  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338,

348, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting <u>Califano</u> <u>v. Yamasaki</u>, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)). In order to justify a departure from the general rule that each litigant proceeds with their own action, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Id.</u> at 348-49 (quoting <u>East Tex. Motor Freight System, Inc. v.</u> <u>Rodriguez</u>, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977)) (internal quotation marks omitted).

Every putative class action must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy. <u>City Select</u> <u>Auto Sales, Inc. v. BMW Bank of N. Am., Inc.</u>, 867 F.3d 434, 438 (3d Cir. 2017) (citing <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). In more detail, Rule 23(a) requires the movant to establish that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); <u>Beneli v. Bca Fin. Servs.</u>, 324 F.R.D. 89, 95 (D.N.J. 2018).

The party "seeking class certification bear[s] the burden of establishing by a preponderance of the evidence that the requirements of Rule 23(a) have been met." In re NFL Players Concussion Injury Litig., 821 F.3d 410, 426 (3d Cir. 2016) (quoting In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig., 795 F.3d 380, 391 (3d Cir. 2015)).

In addition to the Rule 23(a) requirements, a class action must be maintainable under Rule 23(b)(1), (2), or (3). Plaintiff focuses exclusively on Rule 23(b)(3), which requires Plaintiff to meet the additional requirements of predominance and superiority. City Select, 867 F.3d at 438-39 (citing Amchem, 521 U.S. at 615). Under that subsection, a class must also be "currently and readily ascertainable based on objective criteria." Id. at 439 (quoting Marcus v. BMW of N. Am. LLC, 687 F.3d 583, 593 (3d Cir. 2012)). To satisfy this standard, Plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" Id. (quoting Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015)); Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013). The district court must "undertake a rigorous analysis of the evidence to determine if the standard is met." Id. (quoting Carrera, 727 F.3d at 306).

A. Rule 23(a) Analysis

Plaintiff has satisfied the Rule 23(a) factors by a preponderance of the evidence.

1. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." In re NFL Players Concussion Injury Litig., 821 F.3d at 426 (quoting Fed. R. Civ. P. 23(a)(1)). "There is no magic number of class members needed for a suit to proceed as a class action." Id. That said, numerosity is generally satisfied if there are more than forty (40) class members. Id. (citing Marcus v. BMW of N. Am., LLC, 687 F.3d at 595; Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)).

According to Plaintiff, Defendant's discovery responses establish that numerosity is satisfied. See (ECF No. 17-1 ("Pl. Br.") at 6). Defendant disagrees, arguing that any finding of numerosity would "rest only on speculation[.]" (ECF No. 27 ("Def. Br.") at 5).

The limited evidence before the Court suggests numerosity has been met. Meyer explains that based upon a searching inquiry guided by "the criteria that [Defendant was] provided in the suit based on the class action, [Defendant] looked at what constituted the class" and was able to identify 94 people

meeting the class definition.[5]  Taking Meyer's testimony at face

value – including the representation that Defendant considered

the contours of the proposed class definition and, based upon a

reasoned analysis, concluded that 94 individuals fit within that

definition – the record contains sufficient evidence to

establish numerosity.  Defendant's suggestion otherwise

overlooks the testimony of its own corporate representative.

Based upon Defendant's unequivocal testimony, the Court finds

that Plaintiff has met her burden as to this factor.

### 2. Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that "there [be] questions of law or

fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "[O]nly

one question of law or fact in common is necessary to satisfy

the commonality requirement, despite the use of the plural

'questions' in the language of Rule 23(a)(2)."  In re Schering

Plough Corp. ERISA Litig., 589 F.3d 585, 597 n.10 (3d Cir.

2009); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 359.

Thus, there is a "low threshold for satisfying this

requirement."  Beneli, 324 F.R.D. at 97 (first citing Newton v.

Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183

---

[5] Plaintiff considers Meyer's testimony of 94 potential class
members to "correct" Defendant's interrogatory answer suggesting
the number is 73 people.  Either number is sufficient to
establish numerosity.  In re NFL Players Concussion Injury
Litig., 821 F.3d at 426.

(3d Cir. 2001) and then citing <u>In re Sch. Asbestos Litig.</u>, 789
F.2d 996, 1010 (3d Cir. 1986)) (highlighting the low threshold
for commonality).

Moreover, this requirement does not mandate that all
putative class members share identical claims.  <u>Hassine v.
Jeffes</u>, 846 F.2d 169, 176-77 (3d Cir. 1988).  "Even where
individual facts and circumstances do become important to the
resolution, class treatment is not precluded."  <u>Beneli</u>, 324
F.R.D. at 97 (quoting <u>Baby Neal, et al. v. Casey, et al.</u>, 43
F.3d 48, 56 (3d Cir. 1994)).

Plaintiff posits that this action presents questions of
fact and law common to the class.  Among those common inquiries
are: (1) whether "Defendant report[ed] an incorrect original
creditor to credit reporting agencies" and (2) whether such an
error "violated the FDCPA[.]"  (Pl. Br. at 7).

Defendant argues that "determining whether Defendant
furnished incorrect original creditor information to 'credit
reporting agencies' with respect to a putative class member will
not resolve the issue of whether Defendant violated the FDCPA
with respect to that class member."[6]  (Def. Br. at 6).  Defendant

---

[6] Defendant cites to precedent regarding Article III standing
although the standing argument Defendant pursues in the context
of this case is unclear.  Defendant does not appear to argue
that Plaintiff herself lacks injury-in-fact sufficient to confer
Article III standing, and to the extent Defendant argues that
Plaintiff must separately show that absent members of the

suggests that, in order for liability to attach, members of the class had to have "notice that incorrect original credit information had been furnished[.]" (Def. Br. at 7). Because that question remains unique to each individual class member, Defendant argues that certification would be inappropriate.

This view of the facts raises a legal question: must an absent class member know that Defendant conveyed false information on its credit report in order to proceed?[7] A review of Plaintiff's allegations do not suggest they contain a "knowledge requirement[,]" as Defendant argues.

_____

putative class meet the test for Article III standing, it is incorrect. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 307 (3d Cir. 1998) (quoting Goodman v. Lukens Steel Co., 777 F.2d 113, 122 (3d Cir. 1985), aff'd, 482 U.S. 656, 107 S. Ct. 2617, 96 L. Ed. 2d 572 (1987)) ("the named plaintiffs satisfy Article III. The absentee class members are not required to make a similar showing, because once the named parties have demonstrated they are properly before the court, 'the issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing'"); In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 634 (3d Cir. 2017) (quoting Lewis v. Casey, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

[7] Defendant did not provide an analysis of this issue in its briefing. Nonetheless, the Court construes Defendant's argument, at least in part, as one challenging whether the absent class members must show injury-in-fact in order to proceed. As explained in footnote five, supra, to the extent that is in fact what Defendant argues, that argument lacks merit.

Plaintiff advances claims under 15 U.S.C. § 1692e(2), (8), and (10). (Compl. at ¶40). Those portions of the FDCPA provide, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of—
>
>> (A) the character, amount, or legal status of any debt; or
>>
>> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> . . . .
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
>
> . . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(2), (8), and (10). The plain text of the statute suggests no "knowledge" component is required before a claim becomes viable. Available precedent supports that reading.

A "specific plaintiff need not prove that *she* was actually confused or misled." Id. (quoting Jensen, 791 F.3d at 419)

(emphasis in original). "Instead, the focus is on whether the objective least sophisticated debtor would be deceived or misled by a debt collector's statement in a communication." Id. (citing Jensen, 791 F.3d at 419-20). "To determine whether a representation giving rise to a FDCPA claim is false, deceptive, or misleading, courts in the Third Circuit view the communication at issue 'from the perspective of the least sophisticated debtor.'" Hochberg v. Lenox, Socey, Formidoni, Giordano, Cooley, Lang & Casey, P.C., No. 16-5307, 2017 U.S. Dist. LEXIS 43105, *6 (D.N.J. March 24, 2017) (quoting Kaymark v. Bank of Am., N.A., 783 F.3d 168, 174 (3d Cir. 2015)); Knight v. Midland Credit Mgmt., 755 Fed. Appx. 170, 174 (3d Cir. 2018) (quoting Jensen v. Pressler & Pressler, 791 F.3d 413, 418 (3d Cir. 2015)) (courts analyze FDCPA claims under the "least sophisticated debtor" standard).

That said, for "a debt collector's statement to be actionable, it must be material." Id. (citing Jensen, 791 F.3d at 421). A statement is material if it has "the potential to affect the decision-making process of the least sophisticated debtor." Knight v. Midland Credit Mgmt., 755 Fed. Appx. at 174 (citing Jensen, 791 F.3d at 421). This, though, "is not a particularly high bar." Id. (citing Jensen, 791 F.3d at 421).

Because the least sophisticated consumer test focuses not on whether a particular individual would be confused or misled

14

by Defendant's error but rather on whether the error has the
"potential" to confuse or mislead the least sophisticated
consumer, the relevant inquiry and any resulting conclusion is
common amongst all class members.  See Id.

In light of the applicable law, Plaintiff has sufficiently
demonstrated that relevant, common questions predominate.  Those
questions include: (1) whether Defendant improperly listed
Transworld as the original creditor on trade lines placed on the
proposed class members' credit reports, and (2) whether such
errors would confuse or mislead the objectively judged least
sophisticated consumer.  These inquiries are at the very heart
of this action, despite Defendant's suggestion otherwise.
Plaintiff has met her burden under this factor.

### 3. Rule 23(a)(3): Typicality

"Rule 23(a)(3) requires that the class representatives'
claims be 'typical of the claims . . . of the class.'"  In re
NFL Players Concussion Injury Litig., 821 F.3d at 427 (quoting
Fed. R. Civ. P. 23(a)(3)).  This requirement "ensures the
interests of the class and the class representatives are aligned
'so that the latter will work to benefit the entire class
through the pursuit of their own goals.'"  Id. at 427-28
(quoting Newton, 259 F.3d at 182-83).  Slight factual
differences will generally not preclude a finding of typicality
where there is a "strong similarity of legal theories or where

15

the claim arises from the same practice or course of conduct."
See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent
Actions, 148 F.3d 283, 311 (3d Cir. 1998) (internal citations
omitted).

"[T]he typicality requirement is satisfied as long as
representatives and the class claims arise from the same event
or practice or course of conduct and are based on the same legal
theory." Beneli, 324 F.R.D. at 97 (citing Brosious v.
Children's Place Retail Stores, 189 F.R.D. 138, 146 (D.N.J.
1999); Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923
(3d Cir. 1992) ("Factual differences will not render a claim
atypical if the claim arises from the same event or practice of
course of conduct that gives rise to the claims of the class
members, and it is based on the same legal theory."). Cases
challenging the same unlawful conduct which affects both the
named plaintiffs and the putative class usually satisfy the
typicality requirement irrespective of the varying fact patterns
underlying the individual claims. See, e.g., Grubb v. Green
Tree Servicing, LLC, No. 13-7421, 2017 U.S. Dist. LEXIS 117465,
*58 (D.N.J. July 27, 2017).

In the FDCPA context, courts have found claims typical of
the greater class when they arise from the routine and
repetitive practices of debt collectors:

Plaintiff's allegations, in this matter, are
typical of the claims of the class — that is, they
pertain to debt communications from Defendant, which
are similar in form and substance.  To that end, the
reasons as to why the . . . letters are allegedly
confusing or misleading under the least sophisticated
debtor standard, are equally applicable to the letters
which the potential class members received.  And,
Plaintiff's claims and those of the potential class
member share the same theories of liability, i.e., §§
1692g and 1692e of the FDCPA.

The typicality requirement, therefore, has also
been met.

Grubb v. Green Tree Servicing, LLC, 2017 U.S. Dist. LEXIS

117465, at *60; Nyby v. Convergent Outsourcing, Inc., No. 15-cv-

886, 2017 U.S. Dist. LEXIS 122056, *11 (D.N.J. Aug. 3, 2017)

("Here, Nyby alleges the same claims and injury as the

Settlement Class Members — i.e., receiving the same [l]etter

that allegedly violates the FDCPA.  Accordingly, typicality is

satisfied."); Weissman v. Philip C. Gutworth, P.A., No. 14-cv-

666, 2015 U.S. Dist. LEXIS 67477, *6-7 (D.N.J. May 26, 2015)

("Plaintiff's claims are identical to the class claims.  They

are predicated on the same legal and factual circumstances:

Defendants' alleged practice of mailing collection letters with

legally deficient language.").

Defendant argues that typicality cannot be established

because each individual Plaintiff is subject to a unique

materiality defense.  See (Def. Br. at 8).  Defendant's argument

lacks merit.  True, for "a debt collector's statement to be

actionable, it must be material[,]" <u>Knight v. Midland Credit</u>
<u>Mgmt.</u>, 755 Fed. Appx. at 174 (citing <u>Jensen</u>, 791 F.3d at 421),
but a statement is material if it has "the potential to affect
the decision-making process of the least sophisticated debtor."
<u>Id.</u> (citing <u>Jensen</u>, 791 F.3d at 421).  As noted above, it is
irrelevant whether a particular plaintiff was actually confused
or misled; all that matters is that the proverbial "least
sophisticated debtor" would have been misled.  <u>See</u> <u>Knight v.</u>
<u>Midland Credit Mgmt.</u>, 755 Fed. Appx. at 174 (quoting <u>Jensen</u>, 791
F.3d at 419) (a "specific plaintiff need not prove that *she* was
actually confused or misled.").[8]

The law makes clear that the analysis focuses not on the
subjective perception of the individual, but rather on the
objectively assessed perception of the "least sophisticated
consumer."  With such a broad test of materiality, there does
not appear to be any requirement, therefore, that each
individual debtor have actual knowledge of the erroneous trade
line, and Defendant has cited no authority for the proposition

---

[8] Additionally, the Supreme Court of the United States recently
issued its decision in <u>Rotkiske v. Klemm</u>, No. 18-328, 2019 WL
6703563 (2019) affirming the Third Circuit's *en banc* decision at
890 F.3d 422, 425 (3d Cir. 2018), determining that the statute
of limitations period for FDCPA actions begins to run from the
date of violation, as opposed to the date on which a victim
learns of the violation.  Such a conclusion generally supports a
finding that knowledge of the violation is not a perquisite to
the viability of an action.

that Plaintiff's FDCPA claim arising from these facts contains such an element.

It follows then that Plaintiff's claims are typical of the greater putative class. Specifically, Plaintiff and the putative class allege that Defendant committed a mechanical error affecting the class, namely, placing a trade line on their credit reports improperly listing Transworld as the original creditor. As instructed by Grubb, Nyby, and Weissman, such routine practices in the FDCPA context regularly satisfy the typicality requirement. Because Plaintiff's claims arise from the same course of conduct underlying the claims of the greater putative class and arise under the same legal theory, the typicality requirement is satisfied. See Beneli, 324 F.R.D. at 97 (finding typicality requirement satisfied where claims arise from the same event, practice, or course of conduct).

### 4. Rule 23(a)(4): Adequacy

A class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); Beneli, 324 F.R.D. at 98. "Class representatives 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 343 (3d Cir. 2010) (citations omitted).

The adequacy analysis requires a two-pronged inquiry: first, the named-plaintiff's interests must be sufficiently aligned with the interests of the absentee class members; and second, the plaintiff's counsel must be qualified to represent the class. Beneli, 324 F.R.D. at 98 (citing Newton, 259 F.3d at 187); In re Prudential Ins. Co., 148 F.3d at 312 (a named plaintiff is "adequate" if its interests align with those of the class).

      a.      Adequacy Of The Proposed Class Representative

A class representative must represent a class capably and diligently. "[A] minimal degree of knowledge" about the litigation is adequate. In re NFL Players Concussion Injury Litig., 821 F.3d at 430 (quoting New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 313 (3d Cir. 2007)) (internal quotation marks omitted). "The adequacy inquiry under Rule 23(a)(4) [also] serves to uncover conflicts of interest between named parties and the class they seek to represent." Id. at 431 (quoting Amchem, 521 U.S. at 625). "The 'linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" Id. (quoting Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d Cir. 2012).

There has been no showing that any conflict exists between Plaintiff's interests and those of the absent class members.

Plaintiff testified at her deposition that she understood her role as "to make sure that myself and the other members of the [class]" obtain relief.  (ECF No. 27-1 ("Pl. Dep.") at 1T21:1-7).  Plaintiff further testified that she understood her role as potential class representative and was actively involved in reviewing documents and engaging with counsel in litigating this action.  <u>See</u> (Pl. Dep. at 1T21:1-25).

Defendant has not produced evidence contradicting Plaintiff's testimony or otherwise tending to disprove it.  As such, Plaintiff satisfies this portion of the inquiry.

      b.    <u>Adequacy of Proposed Class Counsel</u>

Rules 23(a)(4) and 23(g) require a court to assess the adequacy of proposed class counsel.  This court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A); <u>Beneli</u>, 324 F.R.D. at 98 (citing <u>Nafar v. Hollywood Tanning Sys., Inc.</u>, No. 06-cv-3826, 2008 WL 3821776, *7 (D.N.J. Aug. 12, 2008)).

The Court finds that proposed class counsel – Daniel Zemel and Nicholas Linker of Zemel Law LLC - are adequate.

i.  The Work Counsel Has Done In Identifying Or
    Investigating Potential Claims In The Action

Based upon the declarations of Zemel and Linker and the
record before the Court, it appears that counsel has undertaken
the following efforts to identify and investigate potential
claims in this action:

        - interviewed Plaintiff to obtain information
          necessary to filing the present action;

        - reviewed documents associated with this action as
          provided by Plaintiff;

        - conducted legal research into the claims at issue so
          as to make a sound legal judgment as to which claims
          to bring;

        - drafted and reviewed all necessary pleadings in this
          action, including the Complaint and present Motion;

        - engaged in the discovery process, including by
          participating in written discovery and deposition
          practice.

See (ECF No. 17-2 ("Zemel Decl." at ¶8).  The Court also
recognizes that counsel has appeared for various conferences
with the Court.  In light of these efforts, this factor weighs
in favor of finding counsel adequate.

ii. Counsel's Experience In Handling Class Actions,
    Other Complex Litigation, And Claims Of The Type
    Asserted In The Action & Counsel's Knowledge Of The
    Applicable Law

According to Zemel's declaration, he has appeared in more
than 400 FDCPA cases in courts throughout the United States and
has been appointed class counsel in six (6) FDCPA actions:

- <u>Rincon-Marin v. Credit Control, LLC</u>, No. 3:17-cv-00007, 2018 U.S. Dist. LEXIS 29312 (D. Conn. 2018);

- <u>O'Dell v. National Recovery Agency</u>, No. 5:16-cv-05211, 2018 U.S. Dist. LEXIS 36099 (E.D. Pa. 2018);

- <u>Del Carmen v. R.A. Rogers</u>, No. 5:16-cv-00971, 2018 U.S. Dist. LEXIS 224754 (W.D. Tx. 2018);

- <u>Williams v. Global Credit & Collections et al.</u>, No. 1:17-cv-03323 (N.D. Ill. 2018);

- <u>Gibson v. McCarthy Burgess & Wolff</u>, No. 18-02181 (Pennsylvania Court of Common Pleas, 2018);

- <u>Knight v. Midland Credit Mgmt.</u>, No. 17-cv-3118, 2019 U.S. Dist. LEXIS 59794 (E.D. Pa. Apr. 5, 2019).

(Zemel Decl. at ¶9).  According to Linker's declaration, he has appeared as counsel in more than 60 FDCPA cases since graduating law school in 2015 and has been appointed class counsel in one such matter, <u>Gibson v. McCarthy Burgess & Wolff</u>, No. 18-02181 (Pennsylvania Court of Common Pleas, 2018).  (ECF No. 17-3 ("Linker Decl.") at ¶7).

While Defendant argues that Zemel and Linker lack the requisite experience to be deemed adequate, the Court disagrees. Based upon their experience in this specialized type of legal claim, the relatively small size of the putative class, and the relative simplicity of the alleged legal claim, the Court is satisfied that Zemel and Linker are adequate class counsel.

iii.  <u>Counsel's Knowledge Of The Applicable Law</u>

This Court has no reason to question counsel's knowledge of the applicable law.  In light of counsel's experience in FDCPA litigation, as outlined above, the Court is satisfied that this factor weighs in favor of finding counsel adequate.

     iv.   <u>The Resources Counsel Will Commit To Representing The Class</u>

Zemel and Linker declare that they will continue to commit to this litigation and will provide the resources necessary to litigating this matter through completion.  (Linker Decl. at ¶9; Zemel Decl. at ¶11).  Defendant presents no competing evidence, and this Court has no reason to question counsel's representation.  As such, all of the relevant factors weigh in favor of deeming counsel adequate.

     B. <u>Rule 23(b)(3)</u>

After Rule 23(a) is satisfied, a plaintiff must establish that the proposed class also satisfies Rule 23(b).  For class certification under Rule 23(b)(3), the Court must find that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); <u>see</u> <u>Beneli</u>, 324 F.R.D. at 99.  In this case, both considerations favor class certification.

     1. <u>Predominance</u>

Predominance requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). In determining whether common questions predominate, courts have focused on the claims of liability alleged against defendants. See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977).  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  In re NFL Players Concussion Injury Litig., 821 F.3d at 434 (citation omitted).

As discussed more thoroughly in section II.A.2., supra, factually, Plaintiff and the putative class allege that Defendant placed a trade line on their credit report improperly listing Transworld as the original creditor.  That factual inquiry predominates over any other.  Likewise, a common issue of law — whether Defendant's action would confuse or mislead the least sophisticated consumer — predominates over any individual issues relating to each absent class member.  Therefore, the predominance requirement is satisfied.

## 2. Superiority

To satisfy superiority, Plaintiff must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry requires the Court to "balance, in terms

of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." <u>In re Tropicana Orange Juice Mktg. & Sales Practices Litig. MDL 2353</u>, No. 11-cv-07382, 2019 U.S. Dist. LEXIS 102566, *40 (D.N.J. June 18, 2019) (quoting <u>Danvers Motor Co. v. Ford Motor Co.</u>, 543 F.3d 141, 149 (3d Cir. 2008)). The Court examines "(1) the interest of individual members of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action." <u>Danvers Motor Co.</u>, 543 F.3d at 149-50.

Defendant contends that the availability of statutory damages and the ability to recover counsel fees provides incentive to pursue these actions individually, as opposed to collectively, rendering use of the class action method unnecessary in this action. (Def. Br. at 11). Defendant's argument suggests that FDCPA actions are – as a general rule – best left to individualized litigation.

Plaintiff responds by arguing that the relatively small amount of statutory damages available to each individual plaintiff in FDCPA actions militates in favor of proceeding as a class. The Court agrees.

Contrary to Defendant's argument, the FDCPA specifically contemplates class action practice and recovery under appropriate circumstances, see 15 U.S.C. §1692k(a)(2)(B), (b)(2), and courts across the country – including within this District – routinely certify FDCPA classes, finding them to be a superior method for proceeding with this type of litigation. See, e.g., Beneli, 324 F.R.D. at 99; Barkouras v. Hecker, No. 06-cv-366, 2006 U.S. Dist. LEXIS 88998, *11-12 (D.N.J. Dec. 8, 2006); Grubb v. Green Tree Servicing, LLC, 2017 U.S. Dist. LEXIS 117465, at *73; Nyby, 2017 U.S. Dist. LEXIS 122056, at *11; Weissman, 2015 U.S. Dist. LEXIS 67477, at *6-7.

Turning to the factors set forth in Danvers, the Court finds that resolving this matter by way of class action appears to be the superior method for bringing the present class members' claims to resolution.  Class litigation offers prompt relief and avoids the undue costs class members would incur in individually prosecuting their claims.  Furthermore, there is no indication (and the Court has no reason to believe) that any individual class member has filed a complaint against Defendant elsewhere; given the size of the class, such information seems readily available to the parties and neither has presented any information supporting such a finding to this Court.  The Court envisions no management difficulties in proceeding with this matter as a class action.  As such, in weighing the Danvers

factors, the Court concludes class litigation is a superior method for handling this matter.

### 3. Ascertainability

"Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." Grubb v. Green Tree Servicing, LLC, 2017 U.S. Dist. LEXIS 117465, at *47 (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d at 592-93) (internal citations omitted). The Third Circuit, for example, has held that this requirement serves significant objectives. See Id. "First, it eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members." Id. at *48 (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d at 592-93). Second, "it protects absent class members by facilitating the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action." Id. (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d at 592-93) (internal citation and quotation marks omitted). Finally, an ascertainable class "protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." Id. (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d at 592-93).

To demonstrate ascertainability, the Third Circuit requires a plaintiff to show: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.  Id. (citing Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015)). A plaintiff need not identify every class member at the class certification stage but must simply show that "class members can be identified."  Id. (quoting Byrd, 784 F.3d at 163).

Plaintiff's proposed class definition is comprised of objective criteria that render it capable of being ascertained. Those criteria are: (1) Defendant reported an "incorrect original creditor to [a] credit reporting agenc[y,]" namely, Transworld; (2) the consumers affected by such reporting maintained a "Pennsylvania address[;]" and (3) such events occurred within the temporal limitation outlined by the class definition.

Meyer's deposition testimony confirms the Court's conclusion that the class is ascertainable.  Meyer explained that – after reviewing the class definition in conjunction with Defendant's records – Defendant was able to identify 94 individuals falling within Plaintiff's proposed class definition.  Such testimony not only establishes that the class is ascertainable, but suggests it has already been ascertained.

## CONCLUSION

Based on the foregoing analysis, Plaintiff's Motion (ECF No. 17) will be granted.[9]

While Plaintiff submitted a proposed order for the Court's consideration, the form of the proposed order is not entirely consistent with this Opinion.  As such, the Court will Order Plaintiff to draft and submit a revised proposed order consistent with this Opinion.  In that revised order, among other things, Plaintiff shall refine the proposed class definition in a manner consistent this Court's analysis in footnote three, <u>supra</u>.  Once submitted, Defendant shall have an opportunity to object to the proposed form.  Any objections shall be made within seven (7) days of the proposed order being filed.

An appropriate Order will follow.


Date: December 18, 2019              s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[9] On May 1, 2019, the Court stayed discovery pending resolution of the motion for class certification.  (ECF No. 20). Magistrate Judge Schneider may lift the discovery stay and discovery should proceed in due course.